487 P.2d 1356

**STATE of New Mexico, Plaintiff-Appellee,**

v.

**Pete GARCIA, Defendant-Appellant.**

**No. 648.**

Court of Appeals of New Mexico.

July 30, 1971.

Charles Driscoll, Dan A. McKinnon, III, Albuquerque, for defendant-appellant.

David L. Norvell, Atty. Gen., Ray ·Shollenbarger, Sp. Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

## OPINION

WOOD, Chief Judge.

Defendant, charged with murder in the death of Julian Narvaez, was convicted of voluntary manslaughter. Section 40A-2-3(A), N.M.S.A.1953 (Repl.Vol. 6). Only limited reference is made to the facts because we reverse the conviction for errors occurring at the trial. Since the cause is to be remanded for a new trial, we discuss three errors. We express no opinion as to the other issues raised in the appeal. We discuss: (1) admissibility of defendant's threat; (2) reference to collateral criminal offenses and (3) an instruction on self-defense.

### Admissibility of defendant's threat.

The trial court permitted a State Police agent, "assigned to narcotics," to testify that defendant said to the agent: "'* * * If you or any narco ever stop me and I am loaded, you had better be prepared to shoot it out because I will kill you.'" This statement was made approximately fourteen months prior to the homicide. The agent testified that "narco" designated a police officer that works strictly in narcotics and that "loaded" means carrying narcotics. What connection did this threat to a narcotics agent have to the homicide charge against defendant? This question of relevancy must be examined from the viewpoint of deceased and of defendant.

The State asserts the threat went to the issue of why deceased acted as he did when he confronted defendant. We disagree. If defendant had threatened deceased, or a class of which deceased was a member, and deceased knew of the threat, then the threat would be relevant to deceased's actions when he encountered defendant. State v. Pruett, 22 N.M. 223, 160 P. 362, L.R.A.1918A, 656 (1916). If, however, deceased did not know of the threat, the unknown threat had no bearing on deceased's actions and was irrelevant. Territory of New Mexico v. Yarberry, 2 N.M. (Gild.) 391 at 454 (1883). There is no evidence that deceased knew of the threat; it was not admissible to show why deceased acted as he did.

The threat, even though uncommunicated to deceased, might have a bearing on defendant's actions toward deceased. Whether the threat has such a bearing depends on who was threatened. If the threat was against deceased, it would be relevant. State v. Ardoin, 28 N.M. 641, 216 P. 1048 (1923). If the threat was against a class of persons to which deceased belonged, it would be admissible on the question of defendant's actions. State v. Stewart, 34 N.M. 65, 277 P. 22 (1929). In addition, the threat might be admissible because of the relationship between defendant and deceased under the circumstances of the case. State v. Bailey, 27 N.M. 145, 198 P. 529 (1921).

Here, there is no evidence that defendant made a threat against deceased personally. The evidence is that deceased was not a narcotics agent; he was a sergeant in the patrol division of the Bernalillo County Sheriff's office. Deceased was not a member of the class that was threatened.

The State does claim a relationship in this case which, it asserts, made the statement admissible. It is that deceased was a police officer and the threat could be taken as not limited to police officers "who are solely involved in narcotics." If the threat were susceptible of such an interpretation, the threat would be admissible, and it would be for the jury to determine the meaning of the words used in the threat. State v. Todd, 28 N.M. 518, 214 P. 899 (1923). Here, the words used cannot be taken as applying to police officers generally because they are specific. The threat was against "you or any narco." The threat was against narcotics agents.

We hold that the defendant's threat against narcotics agents, fourteen months earlier, does not point with any reasonable certainty to deceased individually, or as a member of a class. State v. Todd, supra. The threat was not admissible as bearing on defendant's actions toward deceased.

Since a basic contention is that defendant acted in self-defense, admission of the testimony as to defendant's threat was prejudicial error.

*Reference to collateral criminal offenses.*

There were numerous references to defendant as a narcotics addict throughout the trial. Defendant presents a serious question as to the fairness of his trial because of these comments by the prosecutor. We do not decide this question since references to defendant as a narcotics pusher and as a heroin smuggler are in themselves reversible error.

Prior to the opening statement, defendant sought a ruling from the trial court prohibiting the prosecution from referring to him as a narcotics pusher. Defendant's motion was denied and in the opening statement the prosecutor told the jury that defendant was "an admitted narcotics pusher." The remark raises a question of improperly injecting defendant's character in the case, see State v. Alberts, 80 N.M. 472, 457 P.2d 991 (Ct.App.1969), and of prosecutor misconduct either on the ground of bad faith or an improper reference in an opening statement to facts which the prosecutor would be unable to prove. State v. McDonald, 21 N.M. 110, 152 P. 1139 (1915); State v. Torres, 81 N.M. 521, 469 P.2d 166 (Ct.App.1970). However, the remark clearly is a reference to criminal conduct since it characterizes defendant as an admitted felon. See § 54–7–14, N.M.S.A.1953 (Repl.Vol. 8, pt. 2). We consider the remark on that basis.

A doctor called by the defense testified concerning defendant's intent to kill at the time the fatal shot was fired. The prosecutor, cross-examining the doctor concerning physical facts bearing on defendant's intent, suddenly asked:

"Q You are aware, are you not, that Mr. Garcia was convicted of smuggling heroin in 1965, I believe, are you aware of that?"

In the arguments on defendant's motion for a mistrial, the prosecutor attempted to justify the question on the ground he was entitled to find out the basis of the doctor's opinion. The trial court denied the motion for a mistrial, but refused to permit the question to be answered and instructed the jury to disregard the question.

The State asserts the cross-examination question was proper, relying on State v. Turner, 81 N.M. 450, 468 P.2d 421 (Ct. App.1970). *Turner* held cross-examination of expert witnesses concerning collateral offenses was proper in that case; that the expert could be cross-examined as to the facts on which his opinion was based. The cross-examination in *Turner* was held not to be error because of the "novel procedure followed." There, the parties had stipulated that experts could express their opinion " * * * as to whether defendant's denial of the [collateral] charges was truthful. * * * " Here, we have no such stipulation; no such novel procedure. *Turner* is not applicable. The prosecutor's question interjected an alleged prior criminal conviction into the case; it did so by a question directed to a witness, not the defendant. We consider the question on the basis of the reference to the alleged prior conviction, and without regard to the prosecutor's good or bad faith in asking the question.

A person, put on trial for an offense, is to be convicted, if at all, on evidence showing he is guilty of that offense. The defendant is not to be convicted because, generally, he is a bad man, or has committed other crimes. Evidence of other offenses tends to prejudice the jury against the accused and predispose the jury to a belief in defendant's guilt. Thus, the established New Mexico procedure, with certain exceptions not here applicable, is that proof of separate criminal offenses is not admissible and it is prejudicial error to admit such proof. State v. Rowell, 77 N.M. 124, 419 P.2d 966 (1966); compare State v. Turner, supra.

Here, we are not concerned with *proof* of prior convictions but with the interjection of criminal offenses in the open-

ing statement and on cross-examination. Neither the opening statement remark nor the cross-examination question had a direct bearing on the homicide involved. There is neither evidence nor suggestion that the pushing or smuggling of heroin had anything to do with the fight which involved the fatal shooting of deceased and the serious wounding of defendant, and resulted in the homicide charge against defendant. The remark and the question were irrelevant to the case and under State v. Rowell, supra, were prejudicial to defendant. The trial court's admonition to the jury in connection with the question did not cure the prejudice under the circumstances of the case. State v. Rowell, supra.

### Instruction on self-defense.

■ The question of whether the shooting of deceased was in self-defense was submitted to the jury. The jury was instructed on the rule of "apparent necessity," and that the reasonableness of defendant's belief was to be determined from the viewpoint of an ordinarily reasonable person under the existing circumstances. See State v. Beal, 55 N.M. 382, 234 P.2d 331 (1951) and cases therein cited.

After these instructions, which are not in issue here, the jury was instructed that even though the jury found that defendant was not the aggressor, and even though defendant was in fear of his life or great bodily harm:

"* * * he [defendant] had no legal excuse to continue the combat or take any further action after Julian Narvaez was no longer able to continue the conflict or present a danger to Pete Garcia."

This instruction told the jury that if in fact decedent no longer presented a danger, the defendant had no legal excuse to take further action. It apparently contradicts, it clearly confuses, the rule that the apparent necessity for the killing is to be judged on the reasonableness of defendant's belief as an ordinarily reasonable person in the existing circumstances. State v. Beal, supra.

Thus, the issue is: What results when instructions are given which apparently conflict with, and certainly confuse, other admittedly correct instructions? Since we are unable to determine whether the confusing instruction was followed by the jurors, and since this is a homicide case where the theory of self-defense is a critical issue, the confusing instruction was error requiring reversal. See State v. Horton, 57 N.M. 257, 258 P.2d 371 (1953); State v. Buhr, 82 N.M. 371, 482 P.2d 74 (Ct.App.1971).

Although not raised as an issue, the record shows the following elapsed times in this appeal. Notice of Appeal was filed December 17, 1969. The transcript was not docketed in this court until February 16, 1971 or a time lapse of 426 days. Filing of briefs by attorneys was not completed until June 7, 1971; an elapsed time of 111 days. The case was submitted after oral argument on June 15, 1971. From date of submission to date of opinion is 45 days.

The judgment and sentence is reversed. The cause is remanded with instructions to give defendant a new trial.

It is so ordered.

HENDLEY and SUTIN, JJ., concur.