536 P.2d 265
**STATE of New Mexico, Plaintiff-Appellee,**
v.
**Frankie Mae ROSS, Defendant-Appellant.**
**No. 1572.**

Court of Appeals of New Mexico.
May 14, 1975.

**2**

Betty Read, Albuquerque, for defendant-appellant.

Toney Anaya, Atty. Gen., Santa Fe, Ira S. Robinson, Special Asst. Atty. Gen., Albuquerque, Louis Druxman, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

## OPINION

LOPEZ, Judge.

Defendant was convicted of robbery contrary to § 40A–16–2, N.M.S.A.1953 (2d Repl. Vol. 6, Supp.1973), and she appeals. We reverse.

It is undisputed that the complaining witness met the defendant at a bar in Hobbs, that he bought her a drink, that he drove her to a place where they engaged in some sort of sexual activity, and that some of his money wound up in the possession of the defendant. The jury determined that a robbery occurred based upon testimony by the complainant that he was beaten and his billfold taken; based upon testimony by a policeman that when complainant reported the robbery he was "shook up"; based upon identification of defendant by an arresting officer who matched her description with that of the alleged "assailant" given by the complaining witness; and based upon rebuttal testimony concerning answers given by the defendant during cross-examination. It is this last bit of evidence, the admission of which is seriously questioned by defendant on appeal.

On cross-examination, defendant was asked if, on another occasion, she had picked up a Richard Nedler and if she had told a Melvin Miller that she picked up Richard Nedler. She denied any knowledge of these men. Defense counsel objected to this line of questioning.

The prosecution argued successfully to the court that this questioning went to impeachment because the defense had mentioned that two or three other charges were pending against defendant. The record, however, does not support this assertion of an opening by the defense. The defendant was then asked if she knew a Laura Mae Edwards and whether she and Laura Mae had taken money from a man in a

similar situation. Defendant admitted only knowing Laura Mae.

Melvin Miller, a polygraph examiner, was allowed by the court to testify for the prosecution on rebuttal under Rule 613 (b), New Mexico Rules of Evidence, § 20–4–613(b), N.M.S.A.1953 (Repl. Vol. 4, Supp.1973), on the theory that this testimony would be extrinsic evidence of a prior inconsistent statement. Miller testified that the defendant had told him that she and Laura Mae had approached Richard Nedler, that they had agreed on money for prostitution, that defendant had had intercourse with him, that Nedler had accused the two women of stealing his money, that defendant had told Miller she did not know Laura Mae had stolen any money, and that defendant later changed her story to Miller and told him that she had received narcotics bought with money stolen from Nedler.

Defense counsel objected to this testimony on the grounds that Miller was testifying to a collateral matter and that such testimony would be very prejudicial to the defendant.

■ First, was Miller's testimony about a collateral issue? The general test to determine whether or not an issue is collateral is whether the cross-examining party would be allowed to prove the matter in his case in chief. 2 Wharton, Criminal Evidence § 467 (13th ed. 1972); McCormick, Evidence § 36 (1972). If this test is not met, the tender is immaterial and irrelevant to the case at bar, and generally ought not to be admitted for reasons of litigational fairness and judicial economy.

It is evident from the foregoing description of the testimony of Melvin Miller, that the entire "impeachment" offer by the State concerned matters unconnected with the time, place and circumstances of the crime at bar. This at the very least, places the content of Miller's testimony beyond the scope of admissibility as direct evidence in the State's case in chief. Miller's testimony, therefore, concerned collateral matters.

■ Second, should Miller's testimony, being collateral, have been excluded? Evidence of a collateral offense is generally inadmissible in a criminal prosecution to establish a specific crime unless the case falls within an applicable exception. See State v. Aragon, 82 N.M. 66, 475 P.2d 460 (Ct.App.1970), and cases cited therein.

The only evidentiary rules under which the State argues that Miller's testimony could have been admitted are: exceptions to character evidence admissible to prove conduct [Rule 404(a) & (b), § 20–4–404, N.M.S.A.1953 (Repl.Vol. 4, Supp.1973) ]; habit or routine practice [Rule 406, § 20–4–406, N.M.S.A.1953 (Repl. Vol. 4, Supp. 1973)]; and conduct of the witness [Rule 608(a) & (b), § 20–4–608, N.M.S.A.1953 (Repl. Vol. 4, Supp.1973)]. The testimony was inadmissible under each and every one of these rules.

■ Rule 404(a), supra, allows the admission of evidence of an accused's character by the prosecution for the purpose of proving that she acted in conformity therewith on a particular occasion only to rebut character evidence offered by the accused. The record shows that the accused offered no such character evidence. Therefore, the State may not avail itself of the rebuttal benefits of this section.

■ Rule 404(b), supra, does allow, under certain circumstances, evidence of other crimes, wrongs or acts, not to prove that the person had a character trait which she acted in conformity with, but to prove motive, opportunity, intent preparation, plan, knowledge, identity, or absence of mistake or accident. None of these instances are applicable in this case. Even if Miller's testimony is taken as true, it shows only that the defendant hustled Nedler, that someone else stole money from Nedler and, perhaps, that the defendant is a heroin addict. See State v. Rowell, 77 N.M. 124, 419 P.2d 966 (1966); State v. Garcia, 83 N.M. 51, 487 P.2d 1356 (Ct. App.1971).

■ Rule 406, supra, contemplates the introduction of evidence concerning suffi-

**4**

cient instances of routine practice to warrant a finding that the practice was routine. The "sufficient in number" requirement was not satisfied, since only one instance of an arguably similar incident was given.

■ Rule 608(a), supra, is inapplicable in that it allows an attack upon the credibility of a witness only by reference to evidence of truthfulness or untruthfulness. Miller's testimony was admitted without the proper foundation in that the character of the defendant for truthfulness had not been attacked by opinion or reputation evidence or otherwise.

■ Rule 608(b), supra, while allowing evidence of specific instances of conduct to attack a witness' credibility, carries with it the. requirement that the evidence not be extrinsic. This restriction is supplied to prevent prejudice. See State v. Marquez, 87 N.M. 57, 529 P.2d 283 (Ct. App.1974), for a discussion of this limitation. Miller's testimony in this case was purely extrinsic and inadmissible under Rule 608(b), supra.

■ It must be noted at this point that the State based its argument for admissibility at trial on Rule 613, supra. This rule provides for the admissibility of extrinsic evidence of a prior inconsistent statement by a witness for impeachment purposes. The scope of this rule is limited by the necessary balancing of probativeness against prejudice. The extrinsic evidence contemplated by the rule must be material and relevant. State v. Clevenger, 27 N.M. 466, 202 P. 687 (1921). Further, when the extrinsic evidence reaches collateral matters, it is not admissible under this rule, but rather, a cross-examiner is bound and limited by whatever answers he elicits from the witness. State v. Clevenger, supra; State v. Mordecai, 83 N.M. 208, 490 P.2d 466 (Ct.App.1971).

It is blatantly apparent from the record that when the State offered Miller's testimony to "impeach" the defendant, the real purpose of the testimony was to show the jury that the defendant was a prostitute, a heroin addict and a thief. In essence, the State succeeded in demonstrating highly prejudicial testimony through rebuttal evidence which it could not prove directly. The prosecution's effort ". . . was to apprise the jury of the defendant's prior involvement in an incident under circumstances the same or amazingly similar to the one before it. The effect could hardly be other than devastating to the defense." Bryant v. State, 301 N.E.2d 179 (Ind. 1973).

Finally, we recognize and do not depart from the standard of Rule 103(a), § 20-4-103(a), N.M.S.A.1953 (Repl. Vol. 4, Supp.1973), that "[e]rror may not be predicated upon a ruling which admits . . . evidence unless a substantial right of the party is affected . . .." The question before this court is not whether the defendant is guilty or innocent but whether she had a fair trial. State v. Gomez, 75 N.M. 545, 408 P.2d 48 (1965); State v. Vallejos, 86 N.M. 39, 519 P.2d 135 (Ct. App.1974).

As State v. Garcia, supra, states:

"A person, put on trial for an offense, is to be convicted, if at all, on evidence showing he is guilty of that offense. The defendant is not to be convicted because, generally, he is a bad man, or has committed other crimes. Evidence of other offenses tends to prejudice the jury against the accused and predispose the jury to a belief in defendant's guilt. . . ." 83 N.M. at 53, 487 P.2d at 1358.

■ The purpose of a trial is to determine the guilt or innocence of a defendant. In line with this, one of the most important principles or policies behind the Rules of Evidence is to insure that the jury bases its verdict on relevant and material facts, and not on collateral information which leads the jury to believe the defendant is of bad character and therefore more likely than not to be guilty of the charge at issue.

■ We hold that the trial court did not properly balance the probative value of

the collateral testimony against its illegitimate tendency to prejudice. Rule 403, § 20-4-403, N.M.S.A.1953 (Repl. Vol. 4, Supp. 1973); State v. Waller, 80 N.M. 380, 456 P.2d 213 (Ct.App.1969); see State v. Rowell, supra, see State v. Garcia, supra. This is true especially in view of the fact that the case at bar was essentially a swearing contest between the defendant and the complaining witness, both of whose versions of the events of the night were equally plausible or implausible. The improper rebuttal evidence could easily have tipped the balance against the defendant. The defendant's substantial right to a fair trial was thereby violated.

The only way to insure the defendant a fair trial in this case is to award her a new trial at which all objectionable matters shall be excluded, consistent with this opinion.

The judgment and sentence are reversed and the case remanded.

It is so ordered.

HENDLEY and SUTIN, JJ., concur.